BOGUE SHORES HOMEOWNERS ASSOCIATION, INC. AND THE BOARD OF DIRECTORS OF BOGUE SHORES HOMEOWNERS ASSOCIATION, INC. v. TOWN OF ATLANTIC BEACH

No. 923SC191

(Filed 6 April 1993)

1. **Municipal Corporations § 185 (NCI4th)— water rates—motel-condominium—minimum monthly charge**

    The trial court did not err by granting summary judgment for defendant on the issue of whether a minimum monthly charge assessed a motel-condominium was arbitrary or discriminatory where title was acquired to a motel in 1981; the rooms were modified by the addition of permanent kitchen facilities and by combining rooms; a Declaration of Unit Ownership was recorded which established a homeowner's association; the rooms were sold as condominium units; the majority of owners choose to participate in a rental program whereby a manager is employed to rent rooms on a nightly to weekly basis; a front desk is staffed and maid and linen service is provided; plaintiffs advertise as Bogue Shores Motel-Condominiums; defendant annexed the property; defendant had a multi-rate water schedule which established a minimum monthly rate for single residential or commercial users depending on the size of the meter, or service line; the monthly minimum for customers with multiple units served by a single service line is based on the number of units in the development, with motels paying $8.00 for every three rooms and residential condominiums paying $8.00 per unit or usage, whichever is greater; and defendant advised plaintiffs that they would be charged at the rate for residential condominiums. It is apparent that Bogue Shores Motel-Condominiums fits the common, ordinary definition of both "condominium" and "motel," however, plaintiffs' property is a condominium complex within the context of defendant's water ordinance. The fact that many

of the individual condominium owners choose to operate like a motel is not determinative.

2. **Municipal Corporations § 185 (NCI4th) — water rates — motel-condominium — multi-rate schedule — not discriminatory**

The trial court properly granted summary judgment for defendant on the issue of whether a multi-rate water schedule based on the size of the service line was discriminatory or arbitrary where plaintiffs, the owners of Bogue Shores Motel-Condominiums, contended that defendant's water policy is discriminatory because it does not uniformly charge for minimum monthly water service. Defendant's schedule charges multiple unit residential customers with one service line a monthly minimum per unit, as if each unit was equipped with a separate line. Charging a condominium complex based only on the size of the service line rather than on the number of residential units in the complex would unfairly discriminate against single residential customers because it would place an unfair portion of the cost of water service on them.

3. **Municipal Corporations § 185 (NCI4th) — water rates — impact fee — summary judgment premature**

Summary judgment for plaintiffs was premature on the issue of whether an impact fee for connecting a three-inch water service line was arbitrary and capricious where defendant waived the fee pursuant to an unwritten policy for newly annexed areas, the record does not specifically indicate whether defendant determined at any point that plaintiffs were no longer eligible for the impact fee waiver, plaintiffs do not challenge the right of defendant to charge or waive an impact fee, there is no evidence that defendant has demanded payment of the fee, and plaintiffs have not sought declaratory relief.

Appeal by plaintiffs and defendant from order entered 26 November 1991 in Carteret County Superior Court by Judge James Llewellyn. Heard in the Court of Appeals 3 February 1993.

*Kirkman & Whitford, P.A., by Neil B. Whitford, for plaintiff-appellants.*

*Richard L. Stanley for defendant-appellee.*

BOGUE SHORES HOMEOWNERS ASSN. v. TOWN OF ATLANTIC BEACH

[109 N.C. App. 549 (1993)]

GREENE, Judge.

Plaintiffs appeal from an order of the trial court entered 26 November 1991, in part granting defendant's motion for summary judgment. Defendant appeals from the same order in part granting summary judgment in favor of plaintiffs.

The evidence before the trial court at the summary judgment hearing established that in 1981, Morris and Mary Lucy Cherry acquired title to a 150-room motel located near the town of Atlantic Beach, North Carolina. The Cherrys modified the rooms, which contain either 488 or 282 square feet, by adding to each permanent kitchen facilities and by combining two of the rooms to make one unit, and pursuant to N.C.G.S. §§ 47A-2 and -13, recorded in the Carteret County Registry a "Declaration of Unit Ownership of Bogue Shores Condominiums" dated 5 October 1991 (the Declaration). The Declaration established Bogue Shores Homeowner's Association, Inc., a plaintiff herein along with its board of directors. The individual rooms were then sold as condominium units. Pursuant to the Declaration, each owner of one of the 149 Bogue Shores condominium units also owns an interest in common areas, including a swimming pool, utility areas, parking areas, an office and manager's apartment, and grassed areas. The Declaration states that the use of each unit is restricted to "single-family residential purposes."

Even though the individual rooms are separately owned, a majority of the owners choose to participate in a rental program whereby a manager is employed to rent rooms on a nightly to weekly basis. A "front desk" is staffed with clerks who register guests. The rooms, which open directly onto the parking area, are furnished, and maid and linen service is provided. Plaintiffs advertise as "Bogue Shores Motel-Condominiums." The Declaration provides that "the office and manager's apartment building or any portion thereof may be used by the association for any lawful purpose which benefits the members thereof" and that the unit owners may lease their units. The owners, however, are not required to lease their units.

On 28 February 1987, the town of Atlantic Beach, defendant herein, annexed the property owned by plaintiffs. As a result, plaintiffs in the summer of 1988 had the option of connecting to defendant's water supply system, and were so informed by defendant. Defendant's water policy, established in 1986 pursuant to the authority granted in N.C.G.S. § 160A-311 *et seq.* and amended

in 1989 and 1991, contains a multi-rate schedule which establishes a minimum monthly rate for single residential or commercial users depending on the size of the customer's meter, or service line. For example, the minimum monthly rate for a single customer with a three-inch line is $125.00; those with a three-quarter inch line pay a minimum of $8.00. The policy also establishes a rate for customers with multiple units which are served by a single service line, such as condominium and apartment complexes and hotels and motels. The monthly minimum for such customers is based, not on the size of the service line, but on the number of units in the development.

Section 22 of defendant's water policy requires payment of an "impact fee" for new or modified services which, according to the policy, shall be used to fund system improvements and modifications. For connection of a three-inch line, the impact fee is $15,000.00. According to plaintiffs, it is defendant's unwritten policy to waive the impact fee for customers in newly annexed areas, and, in fact, when defendant notified plaintiffs that water service was available, it informed plaintiffs that they had thirty days to apply in order to avoid the impact fee.

After receiving notification from defendant, plaintiffs immediately applied for water service and requested to be charged either according to the size of the building's service line (i.e., three inches, for a minimum monthly bill of $125.00), or at the rate for hotels and motels, which, pursuant to defendant's water policy, is $8.00 per every three rooms in the establishment. Defendant, however, advised plaintiffs that they would be charged at the rate for residential condominiums. This rate is a monthly minimum of $8.00 multiplied by the number of units in the complex, or usage, whichever is greater. For plaintiffs, this amounts to $8.00 times 149 units, or $1,192.00 per month, for an annual minimum total water bill of $14,304.00. Plaintiffs unsuccessfully appealed this decision to the Board of Commissioners of the Town of Atlantic Beach in October, 1988, and on 25 August 1989, filed the complaint in the instant action.

Plaintiffs' complaint alleges that their property is "substantially similar to a motel for purposes of water service and billing by defendant" and that therefore they are entitled to connect to defendant's water system and be billed at the rate for hotels and motels. Plaintiffs further allege that defendant's water rate schedule is arbitrary and discriminatory in violation of its ordinances and

in violation of the Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and of the provisions of N.C.G.S. § 160A-314.

Plaintiffs and defendant filed cross-motions for summary judgment. The trial court, after consideration of the pleadings, a deposition, affidavits, exhibits to the deposition and affidavits, briefs, and arguments of the attorneys for the parties, entered an order on 26 November 1991, in part granting summary judgment in favor of defendant on plaintiffs' claims. The court, however, in part granted summary judgment for plaintiffs on the ground that the portion of defendant's water policy which would require that plaintiffs pay an "impact fee" of $15,000.00 for a three-inch service line connection is arbitrary and capricious. Both parties appeal.

---

The issues are whether the evidence presented at the summary judgment hearing established that (I) defendant pursuant to its water policy properly charged plaintiffs for water service at the rate established for condominiums; (II) defendant's water ordinance is not arbitrary or discriminatory; and (III) whether defendant required payment by plaintiffs of a $15,000.00 "impact fee" for connection of plaintiffs' three-inch service line, and, if not, whether the trial court's granting of summary judgment on this issue was premature.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56 (1990).

*PLAINTIFFS' APPEAL*

I

[1] Plaintiffs argue that the evidence presented by the parties establishes that the property at issue is for all practical purposes a motel and that defendant violated its water policy by charging plaintiffs for water at the rate for condominiums. In the alternative, plaintiffs argue that the evidence conflicts and that there is a genuine issue of material fact with regard to the status of their property as a motel or a condominium complex and, therefore, that summary judgment was improperly granted on this issue.

Contrary to plaintiffs' contention, the facts are not in dispute; rather, all of the evidence establishes that the rooms were in 1981 modified by adding kitchens and then individually sold as condominium units for "single-family residential purposes" pursuant to a declaration of unit ownership; that plaintiffs, however, continued a traditional motel operation, with the majority of owners renting out their furnished units by the day or week, and the provision of a manager, and linen and maid service; that plaintiffs advertise as "Bogue Shores Motel-Condominiums"; and that owners are not required to lease their units.

It is apparent based on the evidence in the record that "Bogue Shores Motel-Condominiums" fits the common, ordinary definition *both* of "condominium" and "motel." *See Webster's Third New International Dictionary* 473, 1474 (1968) (defining condominium as "individual ownership of a unit in a multi-unit structure," and motel as "a group of furnished [rooms] . . . near a highway that offer accommodation to tourists"). Defendant, however, determined that plaintiffs' property, within the context of defendant's water ordinance, is in fact a condominium complex, and we agree. When the rooms in the building and an undivided interest in the common areas were sold to individuals, the rooms became condominium units and the building lost its status as a motel. This view is supported by the declaration of unit ownership recorded by the original owners designating the property as "Bogue Shores Condominiums," and establishing a homeowner's association. The fact that many of the individual condominium owners choose to operate like a motel is not determinative. The trial court properly granted summary judgment in favor of defendant on this issue.

II

[2] Plaintiffs argue that, even if this Court determines that defendant properly billed "Bogue Shores Motel-Condominiums" as a condominium complex, defendant's water ordinance is both arbitrary and discriminatory and in violation of the Equal Protection Clause, Article I, Section 19 of the North Carolina Constitution. Specifically, plaintiffs contend that defendant's water policy is discriminatory because it does not uniformly charge for minimum monthly water service. According to plaintiffs, *all*, not just some, customers should be charged based solely on the size of the service line in use.

**BOGUE SHORES HOMEOWNERS ASSN. v. TOWN OF ATLANTIC BEACH**

[109 N.C. App. 549 (1993)]

Defendant, pursuant to N.C.G.S. § 160A-314(a), has the authority to charge, and to vary, minimum monthly amounts for water service based on reasonable classifications. In setting rates for its water service, however, defendant may not discriminate among customers of essentially the same character and services. *Ricks v. Town of Selma*, 99 N.C. App. 82, 87, 392 S.E.2d 437, 440 (1990). "[T]here must be some reasonable proportion between the variance in the conditions and the variances in the charges." *Id*. The party claiming that a rate-setting ordinance is unreasonable or discriminatory has the burden of proof on the issue. *Id*.

The evidence before the trial court established that under defendant's ordinance, single customers are charged a minimum monthly amount based on the size of their service line. For example, a residential customer living in a house with a three-quarter-inch service line is charged a minimum of $8.00 per month. A commercial customer in a building with a three-inch service line is charged a minimum of $125.00 per month. However, multiple unit residential customers with one service line, such as an apartment, condominium, or mobile home complex, are not charged based on the size of the service line. Rather, these establishments are charged a minimum of $8.00 times the number of units in the establishment.

According to defendant, multiple unit residential customers are analogous to residential customers living in houses with regard to the cooking, bathing, and laundry uses associated with long-term residence. Therefore, their charge *per unit* is the same as that for a single residential customer with a three-quarter-inch line — $8.00 per month. If, instead of using a single three-inch service line for the entire complex, plaintiffs decided to equip each condominium unit with its own separate three-quarter-inch line, then each unit owner would be individually billed a minimum of $8.00 per month. However, when only one service line is used, *the complex* is billed $8.00 for every unit therein. According to defendant, charging a condominium complex based only on the size of the service line rather than on the number of residential units in the complex would unfairly discriminate against single residential customers because it would place an unfair portion of the cost of water service on them. We agree. Accordingly, we conclude that the minimum monthly charge assessed condominium complexes is neither discriminatory nor arbitrary, but is reasonable, and hold that the trial court properly granted summary judgment in favor of defendant on this issue.

*DEFENDANT'S APPEAL*

III

[3]   Defendant argues that the trial court erred in determining that defendant's assessment of a $15,000.00 "impact fee" for connecting plaintiffs' three-inch service line is arbitrary and capricious and in granting summary judgment in favor of plaintiffs on this issue. We agree.

The undisputed evidence at the summary judgment hearing established that Section 22 of defendant's water policy states that "impact fees will be required for all new and modified services" and "shall be put into a capital reserve fund for system improvements and modifications." However, defendant, pursuant to its unwritten policy of waiving the fee for customers in newly annexed areas, informed plaintiffs by letter that this fee would be waived if plaintiffs applied for service "prior to Tuesday, July 19, 1988 at 12 noon," but that "an impact fee . . . will be charged if your application is received after Tuesday, July 19, 1988 at 12 noon." Plaintiffs immediately applied for water service, and defendant determined that "by [plaintiffs] promptly coming in and beginning negotiations, that [defendant] would not require an impact fee if [plaintiffs] decided to hook up the water service at this time."

Other than the aforementioned evidence, nothing in the record sheds any light on whether or not plaintiffs have been or will be assessed a $15,000.00 impact fee. The record does not specifically indicate whether defendant determined at any point after informing plaintiffs that the fee would be waived that plaintiffs were no longer eligible for the impact fee waiver. Nonetheless, the trial court determined that defendant's water policy "which would require that plaintiffs pay an impact fee of $15,000.00 for a three-inch service connection . . . is arbitrary and capricious," and granted summary judgment in favor of plaintiffs on this issue. Because plaintiffs do not challenge the right of defendant to charge — or to waive — an impact fee, because there is no evidence that defendant has demanded payment of the fee by plaintiffs, and because plaintiffs have not sought declaratory relief, that portion of the trial court's order granting summary judgment in favor of plaintiffs is premature.

Based on the foregoing, we affirm that portion of the trial court's order granting summary judgment in favor of defendant,

and reverse that portion of the order granting summary judgment in favor of plaintiffs.

Affirmed in part and vacated in part.

Judges JOHNSON and MARTIN concur.